In our final case this morning is number 181391, NOVA v. Secretary of Veterans Affairs. Congratulations, Mr. Carpenter. You have a trifecta. This is his third time appearing in front of me this week. And there are two days left in the court week. Okay. Mr. Carpenter. Excuse me. May it please the Court. Kenneth Carpenter appearing on behalf of the National Organization of Veterans Advocates. NOVA challenges the Secretary. Mr. Carpenter, is there any authority that prevents the VA from amending a rule following this Court's ruling on a prior rule? No. Well, with the limitation of there is no statute or regulation that prevents that. And there certainly is no case law that prevents it. The case law says, however, that when they do that, they must do so within certain parameters. Reasoned rulemaking. Reasoned rulemaking. That's correct. You're not arguing here that the amended rule is contrary to the statute, right? There is no statute, Your Honor. There isn't? No. This is a regulation that was promulgated by the Secretary under his 511A rulemaking authority. 1155. And not under any specific statute, because this is a regulation that pertains to ratings outside of the rating schedule contemplated by 1155. Let me tell you what my problem is. I mean, it seems to me that basically what you're arguing is that the regulation is arbitrary and capricious in not allowing ratings to be considered together for purposes of extra scheduler ratings. But I don't see any evidence of examples of how this would be arbitrary and capricious, or can I understand from your arguments or from the record how that would be the case? You know, give us an example of where the failure to combine would be arbitrary and capricious. Well, Your Honor, that's the problem with the VA's rulemaking in this case, is that for 80 years, the VA maintained what they refer to as their longstanding interpretation of this regulation. No, but that's not an answer. I'm talking about nobody has come up with hypotheticals where, for example, the failure to consider two ratings together is arbitrary and capricious because there should be a higher extra scheduler rating than would be the case if you considered them individually. It's like a particular veteran, a hypothetical veteran with a particular circumstance. What the judge is asking for. Yes, yes, yes, I believe I understand. And what I was trying to express was that because this rule has been ostensibly ignored for 80 years, and then when this court interpreted the rule opposite their interpretation, there is nothing to compare it to. I can give you hypothetical examples. What's a hypothetical? I mean, there's no record of situations where this would be arbitrary and capricious made before the agency. It's just the whole issue is presented in the abstract. And the reason for that abstraction is, is the Secretary has never applied the rule as he wrote it. That does not prevent people from saying that the way the rule has been applied is arbitrary and capricious because here's example 1, 2, 3, 4, 5, where it is arbitrary. Well, I guess I presumed, Your Honor, that the court would want to see actual examples of how this rule was applied in an arbitrary manner. If the rule has never been applied, and it has never been applied correctly, how can we do anything but speculate as to what might happen? Well, that's the problem. You're going to get speculated as to what might happen. Why shouldn't we resolve this case by just saying, okay, on its face, the rule's not arbitrary and capricious. But if in a future case someone can show that the failure to combine the ratings and consider them together is arbitrary and capricious, then we'll consider the issue in the context of that individual case. Why wouldn't that be the appropriate way to resolve this case? Because that will require veterans to be subjected to this rule that is a rule that has never been applied the way in which it was originally written. I don't think that's an answer. It will enable a veteran who says, I'm being treated arbitrarily because you won't combine the ratings to say in this individual case the failure to combine the ratings is arbitrary and capricious because I would have gotten a higher rating if they were combined. So why shouldn't we wait for a case in which that actually happens in order to consider that issue? I don't see how this court could ever consider that issue on an as-applied basis because it's beyond this court's jurisdiction. It would be an application of law to fact. It would be a discretionary judgment on the part of to determine whether an application is arbitrary and capricious. We have a statute which allows us to consider individual legal issues. That's an individual legal issue. I'm sure you'll be before us arguing that we do have jurisdiction. I am making mental notes as you speak, Your Honor. However, in the proposed rule, the VA says that one of its reasons in amending is to make it logical and consistent with the VA's other regulatory schemes for evaluating disabilities. Isn't that a valid basis for reasoned rulemaking? No, it's not, Your Honor. This regulation was created more than 80 years ago to deal with the fact Making something logical and consistent with other regulatory schemes is not a reasoned basis? No, Your Honor, because this regulation pertains to when the VA's regulations, specifically its rating criteria as mandated by 1155, doesn't work. It doesn't adequately compensate or adequately rate the service-connected disability. So this is outside of those regulations. That's why this is extra scheduler consideration. As extra scheduler consideration, the VA is required to look beyond its own ratings code. Doesn't the whole thing have to work together? Yes, Your Honor. The entire scheme doesn't have to work together. And if they're saying we're trying to make the whole scheme work together, is that not a basis for rational rulemaking? If that were the way in which this regulation is intended to operate, you would be correct. I believe you are incorrect because this regulation acts outside of the VA's regulatory scheme. All I'm doing is reading from what they say. And I'm saying in response to what they said is that they cannot use their own regulatory criteria, their own rating schedule, because that rating schedule has been found as the predicate to trigger the use of this regulation to be inadequate. If it is inadequate, you cannot use the inadequate rating criteria to determine what the appropriate rating would be. Do I understand correctly that what they're saying is that they need to look at the regular rating criteria in order to determine if they are adequate? And their system is only set up to do that for individual ratings as opposed to combined ratings. And that undermines the whole creation of this regulation. As pointed out earlier, this regulation has no statutory predicate in which Congress said create a system to deal with when your rating schedule, as we mandated in 1155, doesn't fit. Why doesn't the fact that there's not a statute here give the agency more power to change its regulation as opposed to less? Well, I would say in the first instance because of the preceding 80 years in which the VA should have been affording this additional consideration so that we would have something to actually compare it to, to show how the VA would have operated had they in fact correctly interpreted the plain and unambiguous meaning of the obligation to consider all of the veterans' disabilities. The VA has arbitrarily... So they have to do this in order to give you a record to argue that it's arbitrary and capricious? No, Your Honor. I'm responding to your construct that that is necessary. I'm saying that they cannot... We still don't have a single example of a situation in which their approach would be arbitrary and capricious. Not a single one. There's not a single one in the record. You haven't given us a single one this morning. How are we supposed to say it's arbitrary and capricious? What about the Johnson case? Wasn't the Johnson case a situation? Can you tell us about the facts there? Would that be an example? It would satisfy Judge Drake's question? Well, in the Johnson case, the veteran was refused consideration of extra scheduler consideration for more than one disability. And the question that was presented in Johnson was, did the VA violate its own regulation when it said, no, we will not consider anything but one service-connected disability? Yes, but if I recall correctly, and maybe I'm wrong about this, I don't see anything in the Johnson case that explains why the VA's approach was arbitrary. The argument was that it was contrary to the regulation, but I don't see that it was explained why it was arbitrary or why the VA's approach undercompensated under the extra scheduler rating. Well, respectfully, Your Honor, the government's defense was, as it is in their rulemaking, is that that's not the way they interpreted the plain meaning of what they wrote. I understand, but you want us to strike down a regulation that's arbitrary and capricious without any explanation as to how it's arbitrary. Your Honor, the way I interpret the Supreme Court's ruling is that the burden is on the Secretary to present to you a reasoned analysis for why the rescinding of the consideration of all of the veterans' disability is the appropriate way to proceed going forward. And with the VA's track record, in which they are supposed to be adjudicating claims in the best interest of the veteran and giving the veteran every benefit of the doubt, they have refused to do that for 80 years. Then they get overruled by this court that that practice is incorrect, that interpretation is incorrect. It is arbitrary and capricious to simply abandon it because they say it would be more efficient in order for them to compare to their own rating schedule. When this regulation was created by the Secretary on his authority to create a regulation that is consistent with the laws that he administers, and the laws that he administers are the rating schedule that the predicate to get consideration. You cannot get consideration under this regulation unless there is a finding that the regulation is inadequate to rate the veterans' service-connected disabilities. And without considering the totality of the veterans' service-connected disability, you get a skewed view by simply looking at that in isolation. And that's what this court found in Johnson was wrong with their interpretation that you could interpret the phrase disability or disabilities as being other than its plain and unambiguous meaning. Okay. Do you want to save the rest of your time? I would. Thank you, Your Honor. Mr. Hockey? May it please the Court. I mean, the case is that NOVA is not satisfied with how the Secretary has always interpreted the extra scheduler rating at 3.321. Johnson alerted the VA to the fact that the plain language as using S's in the term disability picture, in other words, could be read to apply to a combination of disabilities, which had never been VA's intended, never been used that way. So VA reacted as agencies are allowed to react in the absence of a court interpreting a statute in a manner that allows no wiggle room, which this did not. This court did not address in Johnson 1155 or that 3.321 could only be read in one way with respect to 1155. And so the agency reacted by addressing the concerns that the court raised in its plain language review. Okay, but that all makes a lot of sense, that you have a system, and making the combination determinations is inconsistent with the system. It would be difficult for the VA to do it, so on and so forth. It all makes perfect sense. But if the regulation produced arbitrary results, then it might still be invalid under the Administrative Procedure Act. So then the problem here is that there isn't any evidence in the rulemaking that it produced arbitrary results. But suppose hypothetically that in some future case, a veteran is able to show that the failure to consider the combination does produce an arbitrary result. What happens then? You'd have to measure that against what Congress has told the Secretary to do. In 1155, what Congress has told the Secretary to do is to come up with a common rating schedule and a common way to combine the effect of multiple disabilities. And that is the rating schedule that appears at 38 CFR 4.71A through 4.150, and the table of combined ratings that appears at 38 CFR 4.25. So under the direction of 1155, the Secretary has satisfied the requirements that Congress imposed. Let me ask you this. At 12, you say, individual disabilities are evaluated under criteria in VA's rating schedules describing the effect of specific diseases and injuries. The ratings assigned for individual conditions are then combined into a single combined evaluation under a uniform formula set forth in the table. Are extra scheduler evaluations factored into that single combined evaluation? Yes, and I'll explain. In 3.321, where the Secretary has always interpreted that... And it's important to remember, what is the purpose behind 3.321? I mean, this wasn't focused on Johnson because it's a plain language decision. But the purpose wasn't to address the combined language phrase that's contained in 1155. In fact, it wasn't really designed to address any direction in 1155. What it was designed to do was to address the reality that when you develop a common rating schedule that everyone uses, there may be situations in which a particular claimant's disability is not reflected in the way the rating... the diagnostic code levels of rating were created for that particular disability. And so the VA decided, and this was sort of a part of the generous, beneficent... usually that we're responding to. Here, we're trying to tailor the rating schedule in a way that would sort of address these odd cases, these exceptional cases. And the best way to do that is by using the standards that are contained in the rating schedule and comparing the effect of the disability on the individual veteran. In terms of the examples in the regulation are frequent hospitalization, unusual work effects. That is done at the disability level. Then there's a factor given to it. And if there's more than one disability, that's rolled into the combined factor table, if you will. The other extra scheduler provision is the 4.16 TDIU provision. And that's sort of... it's similar in the sense that VA designed that to deal with the problem where either a single disability isn't really reflected in the schedule... where everything adds up. But the point there is, rather than allowing for sort of willy-nilly, oh, I think this guy deserves more, which is kind of the... sort of the gist behind what NOVA's argument is, and that's why the secretary's uncomfortable doing that kind of a thing. They look at it from something that's a little bit more objectively measurable, which is employability. And so if you are employable, or if you're not employable, as the case in 4.16 would be, then facts can establish that. The evaluators in the field can look at it and determine this person's not employable. Yeah, but the problem is that some instances in which that's not going to take account of the reality of the situation. If he was... I understand that there's a separate scheduler rating concerning the loss of one leg and both legs, but let's assume there weren't. And you had a veteran who had lost both legs, but the only scheduler rating was on an individual leg basis. I mean, surely, it would conceivably be arbitrary for the VA to refuse to consider those two disabilities together and the impact that they have together on employability. And suppose... I know that can't happen under the actual rating schedule, but I'm giving it to you as a hypothetical. Suppose we had a situation like that in the future in which a veteran could make the showing that the only way that you can have a realistic determination of unemployability is by considering the two disabilities together. Couldn't it be arbitrary under some circumstances for the VA to refuse to do that? I would think without a change to the language of 1155, the answer is no. What the VA is doing is implementing congressional direction in establishing the schedule of ratings. And when the Congress says... The Congress recognized in imposing the direction of 1155 on the agency that there are, as in almost all regulatory or statutory schemes, administrative burdens associated with attempting to do whatever the mission of the agency is. Here the mission of the agency is to give benefits. And so there's going to be a line like in all these situations where you have to say at this point trying to address particular idiosyncrasies of every different claimant and I think the numbers are 2 million claims are submitted annually these days, that it becomes too much of a burden on the system. The hypothetical that I'm giving you that would not be required. It would be up to the veteran to say in this particular case it's arbitrary because the combination should lead to a higher rating. So I'm going to simply circle back but I'm going to answer this in a different way too. To reiterate, we would still maintain that in the absence of a direction from Congress to approach the issue of veterans benefits on an individual basis but rather to come up with a system which is administratable. The statutory authority could itself be arbitrary and capricious. We're getting into questions of this is what the Johnson case was about. Sure, if there was a way to read the regulations so that you could provide more benefits, notwithstanding Sears and other that would be desirable. But there are limits as to how you can do that. That's what's reflected in this rulemaking and how the VA has always construed it. The VA thought that the most practical way to address the potential weaknesses in the schedule that applies to all is to address it through the disability. Circling back to your hypothetical, there are also requirements in Part 4 of 38 CFR imposed upon the medical examiners and the raters to really hone in on what's going on here. Figure out where you can best identify within the rating schedule what diagnostic code best measures up with what the veteran is experiencing. You could actually see a situation in which someone comes in and says you're not going to have a claim generally that I have diagnostic code 4.63 and diagnostic code 70. No, you're going to have a claim that says I have something wrong with me and as a result I'm going to the hospital frequently. Impetus will be on the medical official examiner and the rating official to try to figure out whether that symptomatology or that experience can be fit within a particular disability. If so, whether that rating for that disability addresses it. If it cannot, 3.321 extra scheduler relief may be afforded. The concern you have, Your Honor, generally may not be something that pops up because the system may be used. It may not pop up very often but it may pop up sometimes. But again, you have to have a system that works for everybody and this court said that in numerous cases, Sears being the one example where you have to interpret the whole system but the problem is  working for people. The combination doesn't adequately reflect the degree of disability. I'm not sure. I mean, we have a system that's been applied for 80 years in a particular manner and we had what I concede is a very clever plain language argument raised by the counsel for Mr. Johnson. And then the agency reacts to it. It's not like this has been an ongoing problem. Can I see if I understand  Something that I think I'm hearing from you is that because you're looking at symptoms with these individual conditions the symptom might be, for example, frequent hospitalization Or the reality that they're experiencing. Things like that. It doesn't necessarily matter which medical condition under which that symptom is identified. What I'm saying is that the instructions of Part IV are imposed upon both the medical examiner to take into account the effect of the disability on the person's life and the rater who is really out to try to see if he can maximize the benefits available to the claimant. A lot of times we stand here and are subjected to suggestions that that's not the case, but that is the mission of the agency. So what I'm suggesting is that when confronted with a situation in which the claimant has demonstrated that he experiences frequent hospitalizations or misses work but not sufficient enough to meet standards of 4.16, the rating official and the medical examiner may very well resolve it through the government's interpretation of 3.321 by associating that frequent hospitalization with a particular disability. Instead of having to resort to an argument that it's really the combination of disabilities. In many cases it may not be a combination of disabilities. If you look at something hard enough, you could probably identify the major cause of the frequent hospitalizations. It may very well be that that is sufficient under 3.21 or that particular rater's application of it to provide an extra schedule or benefit in that case. What we understand NOVA to be arguing here is notwithstanding that possibility, because the Johnson case read the plain language of 3.321 as it did, there should be some sort of new step in the review process that takes place after everything else is done vis-a-vis the individual disabilities and after 4.25 is applied to come up with the overall combined rating and there's some sense that at that point that is still insufficient and there should be another look-see at the question with the idea that well, we didn't capture the frequent hospitalizations or we didn't capture the loss of work opportunity and so we should just give them credit for that even though we can't associate it with any particular disability. Are you familiar enough with the Johnson case to know what it was that Johnson was seeking there? I argued Johnson but I have the benefit of hearing the question while I was sitting there able to open the decision and he had a 10% heart condition and a 10% knee condition, which I think he had another 10% rating related to the effect of a bilateral rating, so I think he had either three 10% ratings or two 10% ratings plus the bilateral 10%. Let's just say it's three 10% ratings. The issue in that case, I don't understand it. This court didn't get to the point where whether or not he would have been granted benefits under the two or various interpretations. And Johnson, tell me if I'm wrong about this, my understanding is Johnson never explained why the combination should give him a higher rating. The court approached Johnson from a very, in fact, it would have been delving into the application part if they had taken the next step and added a paragraph at the end. Sometimes Article III compels us to look at the facts. We're not here giving hypothetical opinions on things. I understand, Your Honor. And I'm sure the court understands why I love 7292D and I will reference it every time. But within Johnson, they stopped after they determined the legal question, which was did the plain language of the regulation allow for consideration of extra scheduler relief under 3.321 for the situation of combined disabilities. And certainly, we didn't argue in Johnson that it didn't. Our position in Johnson was it could be interpreted both ways and we were looking for help on the deference front, but that didn't come. So here we are. We asked the regulation consistent with the way we always interpreted it. We think it makes sense. It's consistent. To answer an earlier question, I think Judge Wallach, you had referenced a line from the rulemaking about consistent with the overall system. And an example, which is referenced in a footnote in our brief, is effective dates. Everything about effective date generally gears toward a disability. So you know that  when you look to see the effective date. But when you're dealing with a combined rating that may be added later and the combined rating is a result of multiple disabilities, which may have different effective dates when they were originally awarded. The only caveat I add is I understand perfectly your argument of two million claims. We have to make this work for everybody. But of course, the Constitution applies to each individual. And so arbitrary and capricious could pop up at some point for an individual. And that's the way it is. That's my position. And you know that too. It's a case we'll deal with when it comes up and determine whether a regulatory change is required or some other type of reaction is required. But this isn't that case. Thank you. I'd like to use my rebuttal time to give you a hypothetical. It may be way too late. I understand. However, before I get into that, I'd like to respond to Judge Stoll's question about the outcome in Johnson. I'm not sure it's particularly relevant here, but I was Mr. Johnson's counsel. I took the case back below and Mr. Johnson was able to establish service connection for other multiple disabilities and was eventually awarded the total rating based upon unemployability. So the VA never got to the remanded issue of how to apply or not apply 3.321 in accordance with the plain language. Mr. Hage said you argued that very cleverly. He did. And I received the benefit of that backhanded compliment. Well, I don't think it was backhanded. It was a compliment. Maybe it was just the way I perceived it. I'd like to give you a hypothetical of a veteran who is service connected for post-traumatic stress disorder with a 70% rating. He doesn't meet the 100% scheduler criteria, but he also has, from his combat experience, tinnitus. The rating for tinnitus under the VA's rating schedule is 10%. There is no need to worry. You get 10%. If you don't have it, you get zero. But in my hypothetical, this veteran has other symptoms from his tinnitus. The ringing in the ears becomes a distraction at work. It becomes a frustration. It aggravates his symptoms of post-traumatic stress disorder. It creates a situation in which the constant ringing in the ears prevents him from answering the phone, it prevents him from making calls, it prevents him from being able to hear and interact with other people. Or it panics him. I was getting there, too. It can go through the whole series of triggers for the symptoms of that other service-connected disability. What NOVA believes is arbitrary and capricious about the VA having a regulation that clearly is extraordinarily beneficial to veterans. It is predicated upon doing justice when the rating schedule is inadequate. In order to accord justice, you need to look at the totality. Now, the VA, in my judgment, hides behind the notion that they want to integrate this with the very thing that is the trigger to consideration, which is its rating schedule doesn't work. And tinnitus is the perfect example. 10% is not adequate in my hypothetical veteran situation to compensate him adequately. And that then requires the consideration of the totality of his service-connected disabilities. And I apologize profusely to both NOVA and to this Court for having not provided hypotheticals. Thank you, Mr. Kramer. Thank both counsel. The case is submitted. That concludes our session.